IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SELENA SAUNDERS,                        :

      Plaintiff,

    v.                                         :        Case No. 3:17-cv-00212

GREATER DAYTON REGIONAL                        JUDGE WALTER H. RICE
TRANSIT AUTHORITY,

      Defendant.                        :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC.
#22); DISMISSING PLAINTIFF'S FEDERAL CLAIMS WITH PREJUDICE
AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION
OVER STATE LAW CLAIMS AND DISMISSING THOSE CLAIMS
WITHOUT PREJUDICE; JUDGMENT IS TO ENTER IN FAVOR OF
DEFENDANT AND AGAINST PLAINTIFF, DISMISSING PLAINTIFF'S
FEDERAL CLAIMS WITH PREJUDICE AND DECLINING
SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW
CLAIMS AND DISMISSING SAME WITHOUT PREJUDICE;
TERMINATION ENTRY

---

Defendant, Greater Dayton Regional Transit Authority ("Defendant" or

"RTA"), has filed a motion for summary judgment, Doc. #22, asserting that all

federal claims filed by Plaintiff, Selena Saunders ("Saunders") are either time-

barred or are not actionable.  The RTA also argues that the state law

discrimination claims fail on the merits as a matter of law.

The federal claims alleged by Saunders in her Complaint are under the

Family Medical Leave Act ("FMLA"), 28 U.S.C. § 2617, et seq. (Count I), Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 42 U.S.C. § 2000e-3 (Count II and Count III), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981 (Count II and Count III) and Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (Count IV). Plaintiff's state law discrimination claims for sex discrimination (Count II), retaliation (Count III) and disability (Count IV) are pursuant to O.R.C. § 4112.02.

The federal claims currently before this Court were first alleged by Plaintiff in a Complaint filed on June 5, 2015. The 2015 Complaint was dismissed without prejudice by this Court's Decision and Entry sustaining Saunders's unopposed motion to dismiss pursuant to Rule 41 (a)(2).[1]

Saunders has filed a response opposing the motion for summary judgment, Doc. #28, and the RTA has filed a reply, Doc. #29.

For the reasons set forth below, Defendant's motion for summary judgment is sustained as to all federal claims. The remaining state law claims, pursuant to O.R.C. § 4112 for sex discrimination, retaliation and disability, are dismissed, without prejudice.

## I.    Background Facts

---

[1]Decision and Entry Sustaining Plaintiff's Unopposed Motion to Dismiss, Doc. #16, Pursuant to Rule 41(a)(2); Dismissing Case Without Prejudice, *Selena R. Saunders v. Greater Dayton Regional Transit Authority*, Case No. 3:15-cv-0201, (S.D. Ohio, June 29, 2016).

In December 2000, Saunders was hired by the RTA as a bus driver. Doc. #28-1, PAGEID#1232. On February 5, 2011, she was allegedly involved in an accident when her bus sideswiped a pole on her bus route. Doc. #1, PAGEID#2. No accident report was filed. Plaintiff did not report an accident to her employer, because she did not realize that anything had occurred. Doc. #28-4, PAGEID#1233. On February 28, 2011, the RTA terminated Saunders for failure to report the accident. *Id.* In response to her termination, Plaintiff filed a grievance with her union and also argued that she was a victim of unlawful sexual discrimination, since several male employees who also had unreported accidents were never terminated by the RTA. *Id.*

On August 10, 2011, Saunders filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC") alleging that her termination was the result of discrimination on the basis of her sex. Doc. #22-1, PAGEID#497. In December 2011, the grievance filed with the union was decided in Saunders's favor and the arbitrator ordered the RTA to return her to work with back pay. Plaintiff returned to work in January 2012.

On April 26, 2012, the investigation of discrimination by the EEOC and the OCRC found probable cause to believe the RTA had treated Plaintiff less favorably than her male co-workers for similar work infractions. Doc. #28-4, PAGEID#1234. Following the filing of an administrative complaint against the RTA by the Ohio Attorney General, the RTA and the OCRC entered into a conciliation agreement

3

dated July 1, 2013. Doc. #22-1, PAGEID##499-502. Although Saunders did not join in this settlement, she understood from reading this agreement that the matter was closed. Doc. #22-1, PAGEID##369-70. Later, on September 10, 2013, Saunders received a letter from the EEOC. The letter stated that the matter was settled, that the processing of the charge, subject to the RTA's performance contained in the conciliation agreement, was concluded, that the investigation was completed and that the file would be destroyed. *Id.*, PAGEID##371-72.

In August of 2013, Plaintiff received a serious medical diagnosis from her physician and was prescribed medication. As of result of this diagnosis, Saunders was temporarily unable to drive a commercial vehicle for sustained periods. On August 20, 2013, Plaintiff applied for FMLA leave. *Id.*, PAGEID#4; Doc. #28-4, PAGEID##1234-35.

This first request for FMLA leave was approved and on September 20, 2013, Plaintiff's second request for leave was also approved. Doc. #22-1, PAGEID#548. Although on FMLA leave and unable to drive a commercial vehicle, Plaintiff states that was still able to drive her personal vehicle and during this time she continued attending nursing school on a part-time basis as she had been doing since 2012. Doc. #28-4, PAGEID#1240. Meanwhile, Saunders learned, after contacting the police, that the "suspicious man" who had been following her while she was on FMLA leave and driving her personal vehicle was a private investigator hired by the RTA.

From October 1 through October 25, 2013, there was a series of communications between and among the RTA, Plaintiff's counsel, and the RTA union president concerning the RTA's request to schedule a predetermination meeting with Plaintiff. The purpose of the meeting was "ostensibly to discover whether or not Plaintiff's FMLA leave was consistent with Defendant's policies and procedures." *Id.*, PAGEID#5; Doc.#28-4, PAGEID#1240-1241.

On October 25, 2013, Plaintiff applied for an FMLA extension. On November 4, 2013, Defendant's Leave Administrator sent correspondence to Plaintiff indicating that Defendant was reviewing her request and that she would hear from them "shortly." Doc.#1, PAGEID#6. On November 20, 2013, Defendant informed Plaintiff in a letter that her FMLA leave extension request was denied. Doc. #22-1, PAGEID#552. The November 20, 2013, letter also informed Saunders of a predetermination meeting to be held November 25, 2013. Defendant stated in the letter that the purpose of the meeting was to determine whether Plaintiff's "activities during your leave are consistent with our policies and procedures." Doc. #22-1, PAGEID#552. The letter stated that Saunders must return to work. *Id.* Plaintiff contended, however, that her doctor had not released her to do so. *Id.*

Plaintiff did not receive Defendant's November 20, 2013, letter until Saturday, November 23, 2013, *Id.*, PAGEID#7. The RTA Union President responded on Saunders's behalf and advised the RTA that there was insufficient notice to Plaintiff of a predetermination meeting, that the November 20, 2013, letter was "retaliatory and discriminatory," created "a hostile working

environment for Plaintiff" and was harassment. *Id.*; Doc. 28-4, PAGEID#1240. The letter to the RTA further stated that the Union President and/or Plaintiff's attorney could attend any meeting with the RTA on Plaintiff's behalf, that she would return to work only if her doctor permitted it "and that her off-the-clock activities were irrelevant under the collective bargaining agreement." *Id.* PAGEID#7

On December 3, 2013, the RTA sent correspondence to Saunders entitled "Final Notice of Predetermination Meeting" and told her that this meeting would be held on December 6, 2013. Doc. #22-1, PAGEID#557. The Union President responded on December 3, 2013, again telling the RTA that expecting Saunders to attend such a meeting was a form of harassment and retaliation, that her doctor would not permit a return to work to operate a bus, that Plaintiff could not pass an ODOT physical, that she would submit to an independent examination and would return to work if she could do "light work." Doc. #1, PAGEID#8; Doc. #28-4, PAGEID#1240. The Union President's letter of December 3, 2013, further advised Defendant that Plaintiff was willing to submit to an examination by a doctor of the RTA's choosing. *Id.* Saunders alleges that, on December 6, 2013, she responded by letter to Delbera Crutcher, the RTA's FMLA contact. Doc.#28-4, PAGEID##1236 and 1239. In this letter, Plaintiff denied any misuse of her FMLA to attend to personal matters or nursing school, stated that her physician had not cleared her to return to work and that she was willing to submit to an examination by a physician selected by Defendant. Saunders also offered for her counsel to attend the December 6, 2013, meeting on her behalf. Doc. #1, PAGEID#9.

On December 16, 2013, Defendant sent correspondence to Plaintiff stating that she was terminated. Doc. #1, PAGEID#9; Doc. #28-4, PAGEID#1236. The letter from the RTA stated that Saunders had "elected not to attend" the December 6, 2013, predetermination meeting, that Plaintiff "had abused medical leave to pursue other career opportunities" and that the private investigator had determined that Plaintiff had been attending nursing school while on medical leave. *Id.*; Doc.#28-4, PAGEID#1236. Additionally, Defendant allegedly accused Plaintiff of dishonesty/theft, falsifying absences, submitting a false report of an illness, deceptively using sick leave, and fraudulently obtaining over $8,000 in paid sick leave. Doc. #1, PAGEID#9.

On December 20, 2013, Saunders filed a grievance with her Union concerning her recent termination and other contractual violations.

Plaintiff filed a "Charge of Discrimination and Retaliation and Request for Right to Sue Letter" with the EEOC on October 7, 2014. Doc. #22-1, PAGEID##373 and 504. The October 7, 2014, filing alleged that the RTA discriminated against Saunders when she requested FMLA leave. The October 7, 2014, filing also requested a right to sue notice from the EEOC for the charge filed August 10, 2011, even though Saunders knew that the investigation was closed, concluded and that the file would be (and might already have been) destroyed. *Id.*, PAGEID#373-77. On January 15, 2015, Plaintiff filed a Charge of Discrimination with the OCRC and EEOC, claiming discrimination due to race, retaliation, sex and disability in connection with her December 16, 2013, termination. Doc. #22-1,

PAGEID##578-79. On February 6, 2015, Saunders received a notice of her right to sue for this OCRC and EEOC charge. Finally, on June 24, 2015, Plaintiff received a notice of her right to sue which appears to relate to her charge from August 10, 2011. Doc. #1, PAGEID#2; Doc. #22-1, PAGEID##578-581.

## II.   Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091

(1990). If it so chooses, however, the Court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).


III. **Legal Analysis**

Saunders was first terminated by the RTA on February 28, 2011, for failing to report an accident. Thereafter, Plaintiff's filed a grievance with her union and charges with the EEOC and OCRC for discrimination based on her sex. Saunders was reinstated at the RTA in January 2012, and in April of 2012, the EEOC and the OCRC found probable cause to believe the RTA had treated Plaintiff less favorably than her male co-workers in similar situations. Following her reinstatement, in August of 2013, Plaintiff applied for and received FMLA leave. Doc. #1, PAGEID#4. On December 16, 2013, however, Saunders received a letter from the RTA terminating her employment a second time. Doc. #22-2, PAGEID#741. The RTA alleged in the letter that she failed to attend or send representatives to certain scheduled predetermination conferences or to submit additional medical evidence. *Id.* The letter also asserted that Plaintiff had "abused sick leave and FMLA leave" and "fraudulently obtained over $8,000 in sick leave pay." *Id.*

The RTA argues that each one of Saunders's federal claims is time-barred. Saunders responds by arguing, with respect to her federal claims, that Defendant

has "waived" any right to assert a statute of limitations defense.[2] The Court will review each federal claim asserted by Plaintiff, the applicable statute of limitations and Plaintiff's waiver argument.

## A. Count I – FMLA

A claim filed under the FMLA has a general two-year statute of limitations which accrues as of the date when Plaintiff was terminated. 29 U.S.C. § 2617(c)(1); *Williams v. Northwest Airlines, Inc.* 53 Fed. Appx. 350 (6th Cir. 2002) (FMLA's general two-year statute of limitations accrues on the date of termination).[3] Saunders FMLA claim arises from her termination on December 16, 2013. As the docket of this Court reflects, the Complaint was filed on June 25, 2017, one and a half years beyond the applicable statute of limitations.

## B. Count II – Title VII Sex Discrimination Claims

---

[2] With respect to the timeliness of her state law discrimination claims, Saunders states that "Plaintiff's sex discrimination, disability discrimination, and retaliation claims are actionable under both federal and state law" and that "[T]here is no legitimate argument concerning the state statute of limitation." Doc. #28, PAGEID#1050. Because this Decision and Entry is deciding only whether the federal discrimination claims are time-barred and, if so, dismissing the state law claims of discrimination without prejudice, no determination is being made by this Court as to either the timeliness or merit of any state discrimination claim alleged by Saunders.

[3] Although there is a three-year statute of limitations from the date of termination for willful violations, 29 U.S.C. § 2617(c)(2), Saunders has not alleged this in her Complaint.

On February 28, 2011, Saunders was terminated by the RTA for the unreported accident and on August 10, 2011, she filed a charge with the OCRC and EEOC for sex discrimination. Doc.# 22-1, PAGEID#497. Following a finding of probable cause, an administrative complaint was filed and later, a Conciliation and Consent Order was entered into by the RTA. The OCRC notified Plaintiff, on July 23, 2013, that the case was closed. *Id.*, PAGEID#498. As noted, on September 10, 2013, Saunders, who had opted not to join the settlement, received a notification from the EEOC stating that the "[T]he record presented by the Agency includes evidence that the matter in controversy has been successfully settled" and that the Commission's processing of the charge was concluded. *Id.*, PAGEID#503; Doc. # 28-4, PAGEID#1234. Because the EEOC mistakenly believed that Saunders was part of the settlement, they closed her case. Doc. #28, PAGEID#1045. Following a request from Plaintiff, on June 24, 2015, she received her right to sue notice from the EEOC for her Title VII claim that she had filed in 2011. Doc. #1, PAGEID#20.

Pursuant to 42 U.S.C. § 2000e-5(f)(1), Saunders was required to bring suit for any Title VII claim within ninety days of receiving a notice of her right to sue from the EEOC. *Gex v. Toys "R" Us, Inc.*, No. C-3-06-338, 2007 WL 2852351 at *3 (S.D. Ohio Oct. 2, 2007) (citing *Baldwin County Welcome Center*, 466 U.S. at 149 (1984). Accordingly, Plaintiff's Complaint should have been filed September 22, 2015, as opposed to June 25, 2017.

## C. Count II and III – Section 1981

Saunders's Complaint alleges "violations of her civil rights based on sex discrimination, disability discrimination, retaliation for engaging in protected activity, and violations of the Family Medical Leave Act." Doc. #1, PAGEID#1. Saunders has made no allegation in any of her asserted federal claims that she was ever discriminated against due to her race. Despite the fact that racial discrimination has not been alleged, both Counts II and III also cite to 42 U.S.C. § 1981, a statute that relates to racial discrimination. Doc. #1, PAGEID##11-14.[4] Neither of these counts, however, allege racial discrimination. Specifically, Count II, concerns sex discrimination based on the February 2011 claim and Count III, alleges retaliation as a result of Saunders engaging in "protected activity with complaints of discrimination to the EEOC and OCRC."

As the language of § 1981 makes clear, this statue "only applies to relief for employment discrimination where the employment decision is motivated on the basis of race rather than upon the basis of sex." *Hout v. City of Mansfield*, 550 F. Supp. 2d 701 (N.D. Ohio 2008); *Settles v. MSSC U.S., Inc.*, 5:17-cv-00129, 2018 WL 3745829, (W.D. Kentucky, August 7, 2018). Moreover, even assuming that Plaintiff has asserted a claim of discrimination based on race, such a claim would be

---

[4] Section 1981 reads, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

barred by the four-year statute of limitations as set forth in 28 U.S. C. § 1658.

*Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004) (claims of a hostile work environment, wrongful discharge and refusal to transfer all state violations of the version § 1981 as amended under the 1991 Act are governed by § 1658's 4-year statute of limitations). Accordingly, any claim brought pursuant to § 1981 should have been filed on or before February 28, 2015, four years after Saunders's alleged wrongful termination in February 2011.

For the reasons set forth above, including the testimony of Plaintiff, the allegations of her Complaint as well as the exhibits submitted by the parties, Plaintiff's § 1981 claim is not actionable.

### D. Counts III and IV – Title VII Retaliation and ADA Disability Claims

In Count III, Saunders alleges that she participated in "protected activities by filing complaints with the EEOC and OCRC alleging employment discrimination" and that Defendant retaliated against her by "discriminating against her with respect to disciplinary actions, having her followed off the job, prying into her personal off-the-clock activities, and terminating her employment in retaliation for her participation in legally protected activities." Doc. #1, PAGEID#13.

In Count IV, Saunders alleges that she was unlawfully terminated due to her disability in violation of the ADA.

The RTA, however, argues that Saunders's claim of retaliation in Count III under Title VII and her ADA disability claim in Count IV are time-barred. In order to bring a Title VII and ADA action, a plaintiff must first file, within 300 days after the alleged unlawful employment practice, a charge with the EEOC. *Hall v. The Scotts Co.*, 211 Fed. Appx. 361, 363 (6th Cir. 2006) (ADA claim incorporates the charging requirements of Title VII, 42 U.S.C. § 12117(a)). If a plaintiff fails to file the charge within 300 days, it is barred. *Id.* Additionally, the RTA argues that Saunders was required to file any lawsuit against the RTA for her Title VII and ADA discrimination claims within 90 days of receiving a Notice of a Right to Sue from the EEOC. *See*, 42 U.S.C. § 2000e–5(f) and 42 U.S.C. § 12117; *Garrett v. Weyerhaeuser Co.*, No. 98–1424, 1999 WL 777652, at *1, 191 F.3d 452 (6th Cir.1999). See 42 U.S.C. § 12117.

Saunders was terminated on December 16, 2013. As such, her EEOC charge for any Title VII retaliation violation should have been filed within 300 days or by October 12, 2014. Saunders, however, did not file her charge making this retaliation claim until January 15, 2015. Doc. 22-1, PAGEID#578-79. Moreover, even assuming that the charge was timely filed, which it was not, Saunders received her Notice of a Right to Sue for her January 15, 2015, charges of retaliation and disability on February 6, 2015. *Id.*, PAGEID#580-81. As such, she had 90 days or until May 7, 2015, to file her Complaint. The Complaint herein was filed on June 25, 2017.

### E. Plaintiff's Waiver Argument

The RTA's motion for summary judgment contends that Plaintiff's federal claims are barred by the relevant statute of limitations and that none of the federal claims are extended by either this Court's Rule 41(a)(2) dismissal without prejudice of her 2015 lawsuit against the RTA, or by the Ohio Savings Clause, as set forth in R.C. § 2305.19(A). In response, Saunders contends that Defendant has "waived" any statute of limitations defense.

With respect to Plaintiff's dismissal without prejudice of the 2015 Complaint, Defendant asserts that any argument that this extends the time period for Saunders to file suit is unavailing since the effect of a Rule 41(a)(2) dismissal is "the same as if the suit had never been brought." *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26 (6th Cir. 1987) (citing *Bomer v. Ribicoff*, 304 F.2d 427 (6th Cir.1962)). This legal authority, coupled with the uncontested fact that the relevant statute of limitations for each federal claim had already expired as of the date that Plaintiff's 2015 Complaint was dismissed without prejudice, defeats any argument that Saunders has for an extension of her claims due to her earlier dismissal. Defendant next argues that the savings clause of R.C. § 2305.19(A) does not enable Plaintiff to overcome any statute of limitations bar. This is so, according to the RTA, because each federal cause of action that Saunders has asserted has its own statute of limitations and the Ohio savings clause does not toll or otherwise alter a federal law that has its own statute of limitations. *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, (1965) (expressly rejecting the use of Ohio Rev.

Code § 2305.19 for a late claim under the Federal Employers' Liability Act); *Ruhl v. Ohio Health Department*, 725 Fed. Appx. 324, 334 (6th Cir. 2018) (Ohio savings statute inapplicable to a claim under Part C of the Individuals with Disabilities Education Act, 20 U.S.C. § 1435(a)(10) since the statute of limitations for the federal law controls).

In response to Defendant's arguments, Saunders concedes that each of the federal statute of limitations had, in fact, expired by the time she had refiled her Complaint in 2017. Plaintiff asserts, however, that the RTA "waived" this affirmative defense.

> In support of their argument, Defendant points out that Ohio's Savings Statute does not apply to federal claims that have their own statute of limitations. They correctly point out that the individual statutes of limitations for the federal claims were expired by the time Plaintiff refiled her complaint. However, Defendant ignores the fact that they stipulated to the dismissal with full knowledge that Plaintiff intended to refile. Since Defendant did not oppose[d] the dismissal without prejudice with the intent to refile, they have waived this defense.

Doc. #28, PAGEID##1049-50.

In support of her waiver argument, Saunders cites to *Management Investors, et al. v. United Mine Workers of America*, 610 F.2d 384 (6th Cir.1979).

In *Management Investors*, the district court dismissed the plaintiff's pendent state law claims without prejudice. Following this dismissal, the plaintiff then voluntarily dismissed its federal claims pursuant to Rule 41(a)(2) and thereafter appealed the district court's dismissal of the state law claims. The Sixth Circuit, however, held that because the plaintiff voluntarily dismissed her federal claims, it

lacked standing to appeal the district court's earlier dismissal of the state law claims. "The general rule is that a plaintiff who has requested and been granted or agreed to a voluntary dismissal of his action without prejudice cannot maintain or prosecute an appeal from the order of dismissal." *Id.* at 393. (citations omitted). Plaintiff, however, has presented no evidence that the RTA either requested or agreed to the motion to dismiss without prejudice filed by Plaintiff. As such, Plaintiff's reliance on *Management Investors* in support of her waiver argument is misplaced. The decision of the Sixth Circuit in *Clark v. Nissan Motor Mfg. Corp. U.S.A.*, No. 97-5956, 1998 WL 786892 (6th Cir. Oct. 26, 1998), however, is more instructive of the heavy burden that Saunders must overcome in order to establish a genuine issue of material fact concerning the issue of waiver.

In *Clark*, the plaintiff argued that his refiled complaint under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq,* was not time-barred. According to the plaintiff, the defendant had waived its statute of limitations defense because a stipulation of dismissal, pursuant to Fed. R. Civ. P. 41(a)(1), had been filed in the first action. The stipulation of dismissal, however, only addressed the issue of costs and made no affirmative representation that the defendant had agreed to waive the statute of limitations in any refiled action. Moreover, counsel for the parties in *Management Investors* submitted conflicting affidavits as to whether there was any agreement regarding a waiver of the statute of limitations. In ruling that the defendants' motion for summary judgment should be sustained because the complaint was time-barred, the Sixth Circuit

stated that the plaintiff "can neither offer written documentation of a waiver by Nissan of a statute of limitations defense, nor any authority for his position that equitable tolling should apply in the absence of diligent efforts by a party to protect his position in litigation." [5]

Based upon *Clark*, as well as the underlying facts in this case, Saunders's waiver argument fails. Unlike *Clark*, Saunders filed a motion to dismiss pursuant to Rule 41(a)(2) in connection with her 2015 Complaint, as opposed to a stipulation of dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(1). As such, there is no evidence based on the dismissal of the 2015 Complaint that the RTA agreed to any dismissal much less waived any statute of limitations defense. Additionally, Saunders has presented no written documentation of any waiver agreement by the RTA of a statute of limitations defense.

Accordingly, there is no genuine dispute of a material fact that Plaintiff's FMLA, Title VII, and ADA claims alleged by Plaintiff in this lawsuit are barred by the applicable statute of limitations. With respect to Plaintiff's § 1981 claims, as asserted in Counts II and III, this Court finds that this claim is not legally cognizable.

---

[5] Saunders has made no argument for equitable tolling in this case and, based upon the lack of evidence in support, as well as the fact that the statute of limitations has already run, the Court finds no basis that the statute of limitations should or even can be equitably tolled.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment, Doc. #22, is SUSTAINED in part and OVERRULED in part. Plaintiff's federal claims under the Family Medical Leave Act ("FMLA"), 28 U.S.C. § 2617, et seq. (Count I), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 42 U.S.C. § 2000e-3 (Count II and Count III), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981 (Count II and Count III) and Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (Count IV) are dismissed with prejudice to refiling. Because the Court has dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over Saunders's state law discrimination claims as set forth in Counts II, III and IV, and dismisses those claims without prejudice.[6] *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that if federal claims are dismissed before trial, the state claims should be dismissed as well); 28 U.S.C. §1367(c)(3) (providing that district courts may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction).

---

[6] Because the first dismissal of the 2015 Complaint was by motion and order of the court, and this dismissal of the state law claims of discrimination is without prejudice and is also by order of the Court, the two dismissal rule set out in Rule 41(a)(2) does not apply. *See*, *ASX Inv. Corp. v. Newton*, 183 F.3d 1265,1268 (11th Cir. 1999) ("There is no two dismissal rule set out in Rule 41(a)(2) and we see no basis for reading the two dismissal rule to apply where the first dismissal is achieved by motion and order of the court."); *Olynyk v. Scoles*, 114 Ohio St. 3d 56 (2007) (citing *Newton* approvingly and applying its reasoning to analogous state rule of civil procedure).

Judgment is to enter in favor of Defendant and against Plaintiff, dismissing Plaintiff's federal claims with prejudice and declining supplemental jurisdiction over Plaintiff's state law claims, and dismissing same without prejudice.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: September 24, 2019

WALTER H. RICE
UNITED STATES DISTRICT JUDGE